# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| RICKEY ALLEN HICKMAN #526833, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) NO. 1:17-cv-00046 ) JUDGE CAMPBELL |
| WARDEN TAMMY FORD, | ) ) ) |
| Respondent. | ) |

## MEMORANDUM

Petitioner Rickey Allen Hickman, a state inmate in the Whiteville Correctional Facility in Whiteville, Tennessee, has filed a pro se petition under 28 U.S.C. § 2254 for the writ of habeas corpus, and has paid the filing fee. (Doc. Nos. 1, 4.) The Court will deny the petition for the reasons explained below.

## I. FACTS AND PROCEDURAL HISTORY

A Marshall County jury convicted Petitioner on August 29, 2013, of one count of rape of a child and three counts of aggravated sexual battery. (Doc. No. 12-1 at 44–47.) The prosecution's case at trial relied largely on the testimony of the victim "K.C.," her mother, and her stepfather. The victim, who was in 5th grade at the time of trial, testified that once when she went with Petitioner—her maternal grandfather—to buy ice during a party at the victim's home, Petitioner parked his van behind a tree beside a warehouse on the way home. *State v. Hickman*, No. M2013-02390-CCA-R3-CD, 2014 WL 4557626, at *2 (Tenn. Crim. App. Sept. 16, 2014) (Doc. No. 1 at 23). The Tennessee Court of Criminal Appeals summarized her testimony of what happened there:

He told K.C. to close her eyes, and then he reached in her pants "where the button

> is" on the front. She stated that the Defendant's hands went all the way inside her pants. She recalled that she had underwear on and that his hand went inside of her underwear and touched her "private area." K.C. indicated for the jury that the Defendant touched her "public area." K.C. stated that she did not want the Defendant to touch her. She said that his hand touched near the opening of her vagina and that "part" of his hand went inside of the opening. K.C. said it felt "weird."
>
> K.C. testified that the Defendant then put her hand inside of his pants on the inside of his underwear. She said it felt "hairy" inside his underwear. K.C. stated that the Defendant took her hand out of his pants, and then they drove in the van back to the family party. . . . K.C. recalled that the Defendant told her, "don't tell or you will go to the devil," and made her "pinky swear" that she would not tell anyone. She said it scared her that she would "go to the devil." K.C. testified that she did not tell her mother what had happened because she was scared of the Defendant. After the touching incident, K.C. said she did not want to be around the Defendant and that she stopped hugging him and sitting on his lap.
> . . .
> On cross-examination, K.C. stated that when the Defendant touched her inside the van, his hand did not go insider her vagina but was "just like beside" her vagina. She clarified that "he didn't go in it."

*Id.* at *2–3, 4 (Doc. No. 1 at 23–24). The victim testified about two other occasions when Petitioner touched her "privates" in her bedroom and warned her not to tell anyone, but did not testify that his hand entered her vagina on either occasion. *Id.* at *3. She did not tell anyone about any of those incidents for some time because she was afraid of Petitioner. (Doc. No. 12-2 at 122–23.)

On August 13, 2010, the victim watched a video with a guidance counselor at school about "secrets and not keeping secrets," and she told her step-father and mother later that day about what Petitioner had done. (Doc. No. 12-2 at 40–41, 123–25.) Her mother "freak[ed] out" and took her to the police department that day. (*Id.* at 125–26.) Her mother testified that the party during which Petitioner and the victim made a trip to get ice took place sometime during September or October 2009, and that the circumstances the victim described surrounding the other two incidents took place in December 2009. *State v. Hickman*, 2014 WL 4557626, at *2

2

(Doc. No. 1 at 23). Based on the victim's January 2003 birth date, she was six years old at the time of the incidents. *See id.* at *2 (Doc. No. 1 at 23).

On October 11, 2013, the trial court sentenced Petitioner to terms of imprisonment of 35 years for rape of a child and 12 years for each of the sexual battery convictions. (Doc. No. 12-1 at 84–87.) The judge ordered two of the battery sentences to run concurrent with each other but consecutive to the rape and the other battery sentence, for an effective total sentence of 47 years. (*Id.*) The Tennessee Court of Criminal Appeals affirmed the convictions and sentences on direct appeal, and the Tennessee Supreme Court denied the Petitioner's application for discretionary review on January 16, 2015. (Doc. No. 1 at 22.)

On June 17, 2015, Petitioner filed a pro se petition for state post-conviction relief. (Doc. No. 12-12 at 3–18.) The post-conviction court appointed counsel (Doc. No. 12-12 at 58–59), and substitute counsel (Doc. No. 12-12 at 61–62), who filed an amended petition in December 2015. (Doc. No. 12-12 at 70–87). The court held a hearing on February 12, 2016 (Doc. No. 12-13), and denied relief later that same month. (Doc. No. 12-12 at 93–98.) The Tennessee Court of Criminal Appeals affirmed on January 24, 2017 (Doc. No. 1 at 30), and the Tennessee Supreme Court denied discretionary review on April 12, 2017. (Doc. No. 12-19.)

Petitioner seeks a federal writ of habeas corpus pursuant to Section 2254, and Respondent acknowledges that his petition is timely. (Doc. No. 11 at 2.)

II.     **ISSUES PRESENTED FOR REVIEW**

Petitioner raises two claims for relief:

1. His trial counsel was ineffective for failing to review tapes of the victim's interviews with child services workers or to interview the individuals who conducted the interviews (Doc. No. 1 at 11–15); and

2. The evidence at trial was insufficient as a matter of law to sustain his conviction for rape of a child. (Doc. No. 1 at 15–16.)

3

## III. STANDARD OF REVIEW

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination; the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings.'" *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting § 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 and n.3 (6th Cir. 2014)

5

(observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under Section 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

Thus the standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Petitioner carries the burden of proof. *Pinholster*, 563 U.S. at 181.

Even that demanding review, however, is ordinarily only available to state inmates who have fully exhausted their remedies in the state court system. 28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Pinholster*, 563 U.S. at 182. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v.*

*Netherland*, 518 U.S. 152, 162–63 (1996).

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same). If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), then the claim is technically exhausted, but procedurally barred. *Coleman*, 501 U.S. at 731–32.

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (emphasis in original). Examples of cause include the unavailability of the factual or legal basis for a claim or

7

interference by officials that makes compliance "impracticable." *Id.* To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

**IV.　ANALYSIS**

A.　INEFFECTIVE-ASSISTANCE CLAIM

All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688, 689. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Petitioner asserts, citing trial testimony from Detective Bob Johnson, that the victim was interviewed twice: once on August 31, 2010, and again on January 8, 2011. (Doc. No. 1 at 12; Doc. No. 12-3 at 11, 15.) He alleges that trial counsel failed to review the tape of either of those interviews and failed to interview the individuals who conducted the interviews. (Doc. No. 1 at 12.) He argues that it is "likely," "reasonably probable," or "possible" that, if counsel had conducted that investigation, he "could" or "may" have discovered inconsistencies or evidence of witness-coaching that would have discredited her testimony. (*Id.* at 12–14.) He does not cite to any portion of the record or any other evidence establishing that counsel failed to conduct the investigation, or what evidence the investigation would have revealed. (*Id.*)

Detective Johnson testified at trial that the second interview was necessary because there was no record of the first interview after the children's services worker who conducted that interview left employment without communicating with him. (Doc. No. 12-3 at 11–12, 15.) Petitioner does not cite, and the Court has not discovered, any evidence in the record that a video or other recording of the first interview ever existed.

Petitioner raised a claim in his original pro se post-conviction petition that trial counsel

9

had failed to view tapes of the interviews. (Doc. No. 12-12 at 10–11.) But the following exchange took place during direct examination of trial counsel at the post-conviction hearing:

> Q: Okay. And prior to trial, you had access to the forensic interview of the child, the video forensic interview?
>
> A: That's correct.
>
> Q: Okay. Now, in the interest of full disclosure, Your Honor, one of the things that Mr. Hickman, my client, alleged in his petition was that, that Mr. Haywood has not requested the DCS tapes. But as an officer of the Court, I can assert that based on the pleadings, the record, and his testimony that, that he did in fact –
>
> THE COURT: That he did, indeed, ask for it and did indeed receive it, yeah.
>
> MR. WILSON: And so, we are expressly withdrawing that particular subset of the claim. But I just wanted to alert the Court to that.
>
> THE COURT: All right, sir.
>
> BY MR. WILSON:
> Q: But in any event, you did have the opportunity to view that testimony?
>
> A: That is correct.
>
> Q: Not that testimony, that interview, I should say.
>
> A: Yes.

(Doc. No. 12-13 at 22–23.) Trial counsel went on to testify that the victim's account remained consistent between the recorded interview and her trial testimony, with the only inconsistency being her testimony on cross-examination that Petitioner had not penetrated her vagina when he touched her. (Doc. No. 12-13 at 23–24.)

Trial counsel also testified that he attempted to contact several of the prosecution's witnesses, but they refused to talk with him. (Doc. No. 12-13 at 14–15.) Petitioner does not cite anything in the record to establish whether counsel tried to contact the individuals who

conducted the interviews of the victim.

Because Petitioner affirmatively withdrew his claim about counsel's alleged failure to view interview recordings and never raised any claim about the alleged failure to speak to the interviewers, both prongs of this claim are procedurally defaulted. Petitioner does not address or attempt to overcome this default in his Petition. (Doc. No. 1 at 11–15.) He also has not filed a reply to Respondent's response, which expressly raises the procedural default defense to this claim (Doc. No. 11 at 9–10), despite the Court's initial Order that alerted him to that option. (*See* Doc. No. 6, setting deadline for reply "[i]f Petitioner wishes to contest any of the facts or arguments contained in Respondent's pleading.")

In some circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *see also Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014) (holding that *Martinez* applies in Tennessee). But to overcome default under *Martinez*, a petitioner must show that post-conviction counsel was ineffective during the "initial-review collateral proceeding," *Martinez*, 566 U.S. at 16, and that the underlying ineffective-assistance-of-trial-counsel claim is a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. Petitioner does not satisfy either requirement in this case.

First, the post-conviction transcript clearly reflects that post-conviction counsel made a conscious, strategic decision to withdraw the apparently unfounded claim about trial counsel's failure to investigate the victim's statements. Withdrawing weaker claims in order to preserve credibility with the court does not constitute the deficient performance required to establish that post-conviction counsel was ineffective for the purposes of *Martinez*. *Knowles v. Mirzayance*,

11

556 U.S. 111, 124 (2009) (holding that counsel was not ineffective for recommending "the withdrawal of what he reasonably believed was a claim doomed to fail").

And second, Petitioner's underlying claim is not substantial for *Martinez* purposes for the same reason that post-conviction counsel withdrew it—there is no evidence in the record to support it. The record establishes that trial counsel obtained and reviewed the tape of the victim's second interview. There is no evidence that any tape of the first interview existed, and no evidence about whether counsel talked to or attempted to talk to the interviewers. Accordingly, there is nothing to support Petitioner's claim that counsel's performance was deficient. Moreover, there is nothing—other than Petitioner's sheer speculation about what counsel "may have discovered"—to suggest that Petitioner was prejudiced by any alleged deficiency in the investigation.

This claim alleges a lack of evidence discovered by trial counsel, and does not present any new evidence suggesting that Petitioner is actually innocent of any of the crimes for which is was convicted. Accordingly, its default does not give rise to a miscarriage of justice as defined by *Dretke*.

This claim is procedurally defaulted, without established cause or prejudice, and is not subject to further review.

B. SUFFICIENCY OF THE EVIDENCE

Petitioner alleges that, because the victim gave conflicting testimony on direct- and cross-examination regarding whether or not he had penetrated her vagina during the incident in his van, the evidence was insufficient to sustain his conviction for rape of a child. (Doc. No. 1 at 15–16.) He raised this claim on direct appeal, and the state court rejected it:

> The Defendant contends that the evidence presented at trial is insufficient to sustain his conviction for rape of a child because the victim testified multiple

times that the Defendant did not penetrate her, and she only "acquiesce[d]" and agreed that he did penetrate her after being asked multiple times. He contends that her testimony on direct was inconsistent with her testimony on cross-examination, when she "recanted" that the Defendant had penetrated her. The State responds that the victim's testimony was sufficient to support the jury's finding that the Defendant penetrated her, and that it was for the jury to weigh her testimony on direct and cross-examination and determine how to resolve the conflicting testimony. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392–93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight

> and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 219 Tenn. 4, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557–58 (Tenn. 2000).

A conviction for rape of a child requires "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than (3) years of age but less than thirteen (13) years of age." T.C.A. § 39–13–522(a) (2010). Tennessee Code Annotated section 39–13–501(6) and (7) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body ...." and sexual contact as "the intentional touching of the victim's, the defendant's, or any other person's intimate parts...." There is sexual penetration, in a legal sense, if there is the "slightest penetration" of a female's sexual organ. *State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001). This includes the "outer folds" of the vagina. *Id.*

The victim testified that, while sitting in the Defendant's van parked beside a warehouse, the Defendant told her to close her eyes and stuck his hand down her pants on the inside of her underwear. The victim stated that his hand touched her pubic area and that part of his hand went inside the opening to her vagina. This evidence is sufficient for a jury to conclude that the Defendant sexually penetrated the victim, as legally defined, by penetrating her vagina with part of his hand. We reiterate that any questions regarding conflicting testimony given by the victim are resolved by the jury and will not be overturned by this Court. *See Bolin*, 405 S.W.2d at 771. The Defendant is not entitled to relief on this issue.

*State v. Hickman*, No. M2013-02390-CCA-R3CD, 2014 WL 4557626, at *5–7 (Tenn. Crim. App. Sept. 16, 2014) (Doc. No. 1 at 25–26).

Petitioner asserts that "the state court's factual and legal ruling" was contrary to clearly established federal law, involved an unreasonable application of such law, and was based on an

unreasonable determination of facts. (Doc. No. 1 at 17.) But he does not quote or discuss the state court's analysis, or identify any specific aspect of it that was unreasonable. Respondent argues that the state court's ruling was reasonable. (Doc. No. 11 at 11–13.)

The right to due process guaranteed by the Constitution ensures that no person will suffer a criminal conviction without sufficient proof. The evidence is sufficient if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The state court accurately identified this standard, and analyzed the evidence presented at trial in light of it. It also correctly applied the rule that a reviewing court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Conatser*, 514 F.3d 508, 518–19 (6th Cir. 2008) (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)).

Habeas review adds yet another layer of deference to the sufficiency analysis. In reviewing such an analysis by a state court in a federal habeas action, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). Determining which part (if any) of the victim's trial testimony to believe was the jury's job, *see State v. Patterson*, 99 N.E.3d 970, 974 (Ohio Ct. App. 2017) ("It is the province of the [factfinder] to determine where the truth probably lies from conflicting statements, not only of different witnesses, but by the same witness."), and Petitioner's jury clearly determined that her testimony during direct examination that part of Petitioner's hand had penetrated her vagina was credible, despite other evidence to the contrary. The state court's deference to the jury's

determination, which was supported by a portion of the victim's testimony, was not unreasonable. Particularly in light of the "double layer of deference" this Court must extend on this claim—first to the jury's finding of guilt and then to the state appellate court's finding of sufficient evidence, *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009)—Petitioner is not entitled to relief on this claim.

V.     **CONCLUSION**

For the foregoing reasons, Petitioner is not entitled to relief on either of his habeas claims. Accordingly, the Court will deny the requested relief and dismiss the petition.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE